UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUIGROOMER, LLC, : | |
| : | |
| *Plaintiff*, : | |
| : | |
| v. : | No. 3:23-cv-446 (SFR) |
| : | |
| SLEEKEZ, LLC and JENNIFER L. : | |
| TIPTON, : | |
| : | |
| *Defendants*. : | |

### **RULING AND ORDER ON MOTIONS FOR SANCTIONS**

Plaintiff EquiGroomer, LLC has filed two motions for sanctions against defendants SleekEZ, LLC and Jennifer Tipton alleging vexatious and abusive litigation conduct and spoliation. For the reasons that follow, the motions are DENIED.

**A. MOTION FOR COSTS RE: VEXATIOUS LITIGATION CONDUCT (ECF 61)**

Plaintiff's first motion alleges that defendants have engaged in a pattern of vexatious and abusive litigation conduct and seeks recovery of costs and attorney's fees. ECF 61-1.

**1. Background**

Plaintiff makes the following allegations in its motion. In January 2022, SleekEZ filed an action against plaintiff in the District of Colorado alleging patent infringement, trademark infringement, and false advertising concerning SleekEZ's pet grooming tool. Although Tipton was the actual owner of the subject patent ("the '250 Patent"), SleekEZ falsely pleaded in the Colorado action that it owned the patent. After plaintiff filed a successful motion to transfer venue to the District of Connecticut, SleekEZ voluntarily withdrew the action without prejudice, which left open the possibility that it could sue again.

Wanting a permanent resolution of the dispute, plaintiff then brought this action against SleekEZ and Tipton, its founder and sole member (*see* ECF 51 at 7), seeking a declaratory judgment that plaintiff did not infringe the '250 Patent, that the '250 Patent is invalid and unenforceable, and that plaintiff did not infringe SleekEZ's trademark.[1]  Despite conversing with plaintiff's counsel via email between April and October 2023 and receiving a request to waive service under Rule 4(d), Tipton declined to execute a waiver or service or to provide a location at which she could be served with process.  *See* Emails, ECF 35-2.  Separately, SleekEZ was served but failed to appear and defend.

Plaintiff's counsel emailed a proposed settlement agreement to Tipton in October and November 2023 and warned that if she did not respond then plaintiff would move for default judgment against SleekEZ.  *See* Emails, ECF 35-2 at 2, 7.  Then in April 2024, relying on SleekEZ's assertion of patent ownership in the Colorado action, plaintiff dropped its claims against Tipton and, in May 2024, plaintiff filed motions for default entry against SleekEZ only, followed by a motion for default judgment six days later.  There is no certificate of service on the motions for default, ECF 24, 26, 26-1, and the emails submitted by plaintiff do not show that a copy of the default motions were sent to Tipton, ECF 35-2.  However, in July 2024, SleekEZ appeared through counsel and filed a motion to set aside the default, contending for the first time that Tipton was the patent owner, i.e., that plaintiff was pursuing the wrong defendant.  *See* ECF 34-1 at 11.

Although Judge Bolden granted the motion, ECF 43, he found that SleekEZ's default was willful, *id.* at 11-12, and noted that his decision to set aside the default did not foreclose plaintiff

---

[1] The operative Second Amended Complaint also alleges violation of CUTPA and tortious interference and seeks EquiGroomer's costs and attorney's fees in this action.  ECF 48.

from filing a motion to recover fees relating the default issues, but he did not comment on the potential merits of such a motion.  *Id.* at 17 n.4.  In its motion for sanctions, plaintiff urges to the Court to find a pattern of "abusive and vexatious conduct" and to order defendant to pay all fees and costs plaintiff incurred (a) in litigating the Colorado action, (b) in attempting to serve Tipton in this action, and (c) in litigating the default issues in this action.  ECF 61-1 at 7-8.

   2. **Legal standard**

Courts have the inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process."  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quotation marks and citations omitted); *see also Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (court's "authority to impose sanctions is grounded, first and foremost, in [its] inherent power to control the proceedings that take place before [it].").[2]  Two things are required for a court to shift fees under its inherent authority: there must be "clear evidence" of misconduct that was "entirely without color and [ ] taken for reasons of harassment or delay or for other improper purposes," and the factual findings must be made with "a high degree of specificity."  *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 319, 344 (2d Cir. 1986)).  Furthermore, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion," and the sanction must be "appropriate."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  In civil cases, inherent power sanctions must be compensatory rather than punitive.  *Goodyear* at 108.  "[S]uch an order is limited to the fees the innocent party incurred solely because of the misconduct – or put another way, to the fees that party would not have incurred but for the bad faith."  *Id.* at 103-04.

---

[2] Plaintiff also cites 28 U.S.C. § 1927 as a source of sanctions authority; however, § 1927 is inapplicable because it pertains to sanctions against an attorney, which is not at issue here.

### 3. Analysis

As a starting point, the Court declines plaintiff's invitation to find a broad pattern of abusive and vexatious conduct and to impose wholesale fee-shifting. Instead, according to the but-for test just described, the Court must carefully examine defendants' alleged misconduct to determine what fees, if any, plaintiff incurred as a result. The first step is to determine whether defendants engaged in instances of bad faith.

#### a. Vexatious assertion of claims

The record before the Court does not establish that defendants have litigated intellectual property claims in bad faith, either in the Colorado action or in response to plaintiff's claims in this action. There is no evidence to suggest that SleekEZ intentionally misrepresented in the Colorado action that it, rather than Tipton herself, owned the '250 Patent. In the absence of such evidence, logic suggests that SleekEZ would not invest resources in suing to enforce a patent it did not believe it held, and it is plausible that there was confusion arising from Tipton's sole ownership of SleekEZ. Moreover, defendants could not reasonably have foreseen that its patent ownership allegation in the Colorado action would precipitate, after an attenuated chain of events, EquiGroomer's decision in this successor action to temporarily withdraw its claims against Tipton in order to pursue a default judgment against SleekEZ. Nor does the record establish that SleekEZ withdrew the Colorado action in bad faith. SleekEZ was not required to continue litigating after losing the venue battle, and it was plaintiff who decided to reinitiate the dispute in the present action. And although defendants have now filed affirmative counterclaims in this action, that was in response to being sued. Consequently, the record does not support a finding that defendants litigated the prior action or filed counterclaims in this action for purposes

of harassment, and the Court declines to order defendants to pay any fees or costs incurred by plaintiff in litigating the Colorado action.[3]

### b. Failure to waive service

Nor does the record establish that Tipton's conduct relating to service of process in this action rose to the level of bad faith. To be clear, the Court does not approve of her decision to rebuff the request to waive service that plaintiff sent in July 2023.[4] The Rules emphasize that an individual subject to service under Rule 4(e) "has a *duty* to avoid unnecessary expenses of serving the summons," Fed. R. Civ. P. 4(d)(1) (emphasis added), and a defendant who fails, without good cause, to waive service is liable to pay the plaintiff's expenses incurred in making service and the costs of any motion to collect those service expense, Fed. R. Civ. P. 4(d)(2). But plaintiff has not submitted evidence of any attempts to formally serve Tipton after she failed to waive service; instead, plaintiff amended its complaint in April 2024 to drop its claims against her. And when plaintiff filed its Second Amended Complaint in March 2025 renewing those claims, Tipton did execute a waiver of service. ECF 48, 50. Thus, although the Court does not

---

[3] In addition to the Court's inherent authority, plaintiff also cites Rule 41(d) as a basis to recover costs incurred in the Colorado action. Rule 41(d) provides that if a former plaintiff (here, SleekEZ) who voluntarily dismissed a prior action "files an[other] action based on or including the same claim against the same defendant," then the court may require that plaintiff to pay all or part of the costs of the previous action. Here, EquiGroomer contends that SleekEZ's counterclaims are "the same or substantially similar as the claims in the Colorado lawsuit," ECF 61-1 at 5, but has not identified <u>which</u> claims or provided the Court with an adequate record to test the assertion. Moreover, even assuming the assertion is correct, SleekEZ only reasserted its claims, in the form of counterclaims, after plaintiff rekindled the dispute. These circumstances do not justify requiring SleekEZ to pay EquiGroomer's fees incurred in defending the Colorado action. *See*, *e.g.*, *Sunshine Cellular v. Vanguard Cellular Sys., Inc.*, No. 92-cv-3194 (RLC), 1993 WL 212675, at *6 (S.D.N.Y. June 14, 1993) (declining to impose Rule 41(d) sanctions where previously abandoned claims were reasserted as counterclaims in defense of new action).

[4] Plaintiff provided Tipton with a proper notice and request to waive service pursuant to Rule 41(d)(1) on July 18, 2023. ECF 35-2 at 8-9.

5

countenance Tipton's initial lack of response – which led to Judge Bolden's finding of willful default by SleekEZ – the ordinary remedy for such conduct would be a Rule 4(d)(2) motion, which current record would not support given the lack of evidence that EquiGroomer sought to make formal service and given that plaintiff ultimately waived service.  On this record, the Court does not find the sort of bad faith that would be necessary to invoke the court's inherent sanctions authority.  *See Dow Chemical*, 782 F.2d at 344 (finding of bad faith requires "clear evidence" of misconduct that was "entirely without color and [ ] taken for reasons of harassment or delay or for other improper purposes").

### c. Willful default

Turning to whether defendants acted in bad faith regarding the default judgment proceedings, this Court takes notice of Judge Bolden's prior determination that SleekEZ willfully failed to appear and defend.  ECF 43 at 11-12.  In addition to formal service of process at SleekEZ's offices on June 1, 2023, *see* ECF 11, Judge Bolden found that SleekEZ learned of this lawsuit in April 2023 via email from plaintiff's counsel to Tipton, who alleges that she is SleekEZ's founder and sole member; he rejected SleekEZ's assertion that its ability to appear and defend was hampered by Tipton's limited internet access; and based on Tipton's numerous communications with plaintiff's counsel between April and October 2023, Judge Bolden rejected SleekEZ's assertion that it believed the matter was closed.  ECF 43 at 12.  Citing precedent stating that a default may be found willful where the conduct of the litigant "was egregious and was not satisfactorily explained," *id.* (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)), Judge Bolden concluded that such conduct had occurred here, although he nevertheless granted SleekEZ's motion to set aside the default based on other factors.

SleekEZ argues that its willful default did not amount to bad faith, citing Judge Bolden's separate finding that plaintiff was not substantively prejudiced. However, the fact that plaintiff's case was not substantively prejudiced does not address whether SleekEZ was acting for reasons of harassment or delay or for other improper purposes. On this question, Tipton's decision to wait for a motion for default judgment before retaining counsel for SleekEZ is troubling when viewed in the context of her initial refusal to waive personal service. Nonetheless, other circumstances weigh against a finding of bad faith, including the complicated procedural history of this matter; the fact that defendants were self-represented throughout communications with EquiGroomer's counsel in the lead-up to the default motions; the lack of evidence that EquiGroomer's motions for default entry and default judgment, filed only six days apart, were provided by EquiGroomer to defendants; and the fact that it might take time for defendants, who reside in a distant forum, to retain Connecticut counsel. Consequently, although the Court does not excuse SleekEZ's willful default, the totality of circumstances does not reach the level of bad faith required to invoke the Court's inherent sanctions authority under applicable precedent.

For example, the two cases cited in plaintiff's brief involved substantially more flagrant misconduct. In *Chambers v. NASCO, Inc.*, the Supreme Court affirmed the imposition of sanctions on a party who had schemed to deprive the court of jurisdiction by fraud; defied injunctive orders; was held in civil contempt and yet went on to file "a series of meritless motions and pleadings"; had attempted "to reduce the plaintiff to exhausted compliance" by deploying "tactics of delay, oppression, harassment and massive expenses"; and "obstinately refused to be deterred" despite "repeated timely warnings" from the court. 501 U.S. at 41-45. Similarly, in *Ransmeier v. Mariani*, the Second Circuit imposed monetary sanctions on an attorney and his client who "engaged in a pattern of vexatious and duplicative filings, targeting

opponents and judges with rude language, and asserting spurious legal positions," and then filed a frivolous appellate motion "to air false and egregiously insulting views about the district court without any good-faith belief that the Motion would be successful."  718 F.3d 64, 69-70 (2d Cir. 2013).  The extreme facts of these cases provide little support for the imposition of inherent power sanctions in this case, where defendants' error plausibly appears to be burying their heads in the sand hoping this matter would simply disappear before accepting reality once the motion for default judgment was filed.

      Second Circuit precedent confirms that a default does not necessarily rise to the level of bad faith required to justify inherent power sanctions.  *See Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986) (observing that fee-shifting under inherent authority requires "substantive bad faith as exhibited by, for example, [a party's] pursuit of frivolous contentions, or procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders," and doubting that default alone could support such a finding).  Illustrating this point, a district court declined to impose inherent power sanctions where "defendants [] failed to appear to defend the action in the first instance, and who then, facing a potential default judgment against them, offered explanations for that failure that the [c]ourt did not find plausible."  *PinkNews Media Grp. Ltd. v. Here Publ'g Inc.*, No. 19-cv-5609 (AT) (DF), 2022 WL 2531536, at *5 (S.D.N.Y. Jan. 5, 2022), *report and recommendation adopted*, 2022 WL 2531534 (S.D.N.Y. Jan. 20, 2022).  The court reasoned that those circumstances involved "no affirmative actions to disobey any court order or the filing of any frivolous motions or other activity that would place the case squarely in line with cases like *Chambers*[.]"  *Id.*  Applying that same reasoning here, where SleekEZ and Tipton have now both

8

appeared through counsel and the action is proceeding in an orderly fashion, the Court declines to impose monetary sanctions on defendants relating to the default proceedings.[5]

### B. MOTION FOR SPOLIATION SANCTIONS (ECF 62)

#### 1. Legal standard

A district court also has inherent power to impose sanctions for spoliation of evidence. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Id.* "A party seeking sanctions based on spoliation must establish by a preponderance of evidence: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 374 (2d Cir. 2025) (quotation marks omitted).

Additionally, Rule 37(e) authorizes a court to impose sanctions for spoliation of electronically stored information. It provides that "if [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may order measures to cure any prejudice or, if the party "acted with the intent to deprive another

---

[5] That is not to say that plaintiff's motion for sanctions is without color. Judge Bolden signaled his disapproval when he noted that SleekEZ's willful default might potentially be sanctionable, and this Court likewise does not approve of defendants' uncooperative and dilatory conduct at the outset of this action. Nonetheless, the totality of circumstances fall below the level that would warrant sanctions. *See Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion.").

party of the information's use," the court may impose an adverse inference or enter a default judgment. Fed. R. Civ. P. 37(e).

### 2. Analysis

Here, the evidence in question is a video of a SleekEZ grooming tool that defendants uploaded to YouTube in 2012. In June 2025, several days after plaintiff produced a screenshot copy of the video in discovery, YouTube removed the video at defendants' request. Plaintiff argues that the video is material to the issue of patent validity because it shows that defendants waited too long between putting the product on the market and attempting to patent it, such that their patent application was untimely under 35 U.S.C. § 102(a)(1).

However, plaintiff has failed to establish that defendants lost, destroyed, or significantly altered the video. Plaintiff possesses a copy of the video and has not ruled out the possibility that a copy can also be obtained from YouTube, so it has not demonstrated loss or destruction. As for significant alteration, although plaintiff argues that removed webpage might have contained viewer comments comparing the depicted product to the one described in the '250 Patent, that is both highly speculative and likely inadmissible hearsay, rendering any such comments of dubious evidentiary value. In any event, plaintiff has not ruled out the possibility that copies of any viewer comments may be obtainable from YouTube. Lastly, while plaintiff asserts that certain indicia of authenticity were lost when the video was removed from YouTube, defendants expressly stipulated on the record during oral argument that the screenshot copy of the video saved by plaintiff's counsel is authentic and that the video was originally uploaded to YouTube on September 7, 2011, which will establish an evidentiary foundation of authenticity. For these reasons, the current record does not support the allegation of spoliation and sanctions are not warranted. Accordingly, defendant's motion for spoliation sanctions, ECF 62, is DENIED, but

without prejudice in the event that supplemental discovery provides an appropriate basis to seek such relief.

### C. ORDER

For all the foregoing reasons, plaintiff's motions for sanctions, ECF 61and ECF 62, are DENIED. The latter motion (ECF 62) is denied without prejudice. Defendants are bound to their stipulation regarding the authenticity and upload date of plaintiff's copy of the YouTube video, as described above. Lastly, the Court reminds the parties that cooperation and diligence are required, not optional. All parties must engage in good faith "to secure the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1.

This is not a recommended ruling. A magistrate judge has authority under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) to impose non-dispositive sanctions. *See Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 47, 51 (S.D.N.Y. 2014) (magistrate judge may exercise the court's inherent authority to impose sanctions); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 492 (S.D.N.Y. 2022) ("[O]rders imposing discovery sanctions are ordinarily considered non-dispositive, and therefore fall within the grant of Rule 72(a), unless the sanction disposes of a claim.") (cleaned up). "A magistrate judge's authority to order (rather than recommend) a discovery sanction does not depend on the relief requested, but rather depends on the sanction the magistrate judge actually imposes." *In re Keurig* at 59; *see also Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Because this order is not dispositive of a party's claim or defense, it is an order of the Court unless reversed or modified by the District Judge upon objection timely made. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2.

SO ORDERED, this 16th day of September, 2025, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge
